# ROCKINGHAM,

## JANUARY TERM, A. D. 1857.

## ABBOT *v.* THE TOWN OF FREMONT.

If one is on the town as a pauper, and the value of his labor performed for the town exceeds the amount expended for his relief, he cannot recover for the excess in an action against the town for work and labor.

But if overseers of the poor retain in their charge, as a pauper, an insane person, not needing relief, for the sake of a profit to be made for the town out of his labor, and they let out his labor for a year, to one who pays the town an agreed sum beyond providing for the insane person's support, such insane person may waive his remedy against the overseers for the personal injury, and recover the money of the town in an action for money had and received.

ASSUMPSIT, for work and labor, and for money had and received. The specification of the general counts consisted of charges for the work and labor of the plaintiff, performed for the defendant, and for money received by the defendant for the plaintiff's labor, in different years, from 1820 to the date of the writ, which was January 3, 1853. Plea, the general issue, and a brief statement of the statute of limitations.

On trial the parties agreed to the following facts: The plaintiff, Abbot, is an insane person, and has been such since 1819. He was, at the time of the trial, 64 years of age, and his legal settlement has always been in Poplin, now Fremont. He has no relatives in this State of sufficient ability to support him.

In 1820 he was in Candia, N. H., destitute, and insane, and in need of relief; of which fact the selectmen of that town gave to the selectmen of Poplin written notice, to which town of Poplin Abbot soon after returned, destitute and insane ; whereupon

the selectmen of Poplin took charge of him, furnished him with board and clothing, and other necessaries ; and in that and the following year paid on his account $79.41 for such board, clothing and necessaries, and since that time $6.90 more, which sums are all that the defendant town has ever paid on his account. The town had no poor house or poor farm, but put their paupers into private families, proposals therefor being made by public bids, or otherwise.

From 1822 to 1839, both inclusive, Abbot was disposed of by the defendant town by public bids, in open town meeting, to the persons verbally agreeing to pay the most for his labor and services over and above his board, lodging, and clothing ; the town agreeing to take charge of him, and pay the expenses in case he fell sick.

From 1839 to 1852 inclusive, the selectmen of the town or overseers of the poor received proposals and made verbal agreements privately for the labor and services of Abbot, over and above his board, lodging and clothing, acting under the authority and direction of the town ; the town agreeing to take charge of him and pay the expenses in case he fell sick, he being the only pauper for whose services any thing was offered above board and clothing.

In all the years from 1822 to 1852 inclusive, the town received more or less for the services of Abbot, except the years 1824 and 1825, in which last mentioned years nothing was received for his services or paid for his support. The sums received in different years for his services varied from thirty cents, the smallest, to sixty-three dollars and sixty cents, which was the largest sum received in any one year.

On the 10th of November, 1852, Nathan S. Gilman, whose wife is a sister of Abbot, by the procurement of Abbot and Gilman's friends, was duly appointed guardian of Abbot, who never had one before, and who then was and still is incapable of taking care of himself, and gave bonds and took upon himself that trust, and thereupon demanded of the selectmen of the defendant town the money which the town had received for the labor and

services of Abbot, as is before stated, and which they declined to pay, and afterwards this action was brought. Gilman has since deceased, and Charles W. Follet has been duly appointed, and is now guardian of Abbot.

In addition to the foregoing agreed statement of facts, the defendant offered evidence to show that in 1820 Abbot was very crazy, was traveling about from place to place ; was ragged and dirty ; that he had been kept and boarded by the defendants in proper places and in suitable families, and that none of his relatives had assisted or offered to assist him ; and that after Gilman was appointed his guardian, he put out Abbot to work for his board and clothes only, and that the present guardian has not been able to make any better arrangement.

Upon this case the court directed a verdict for the plaintiff ; and it was agreed by the parties that a verdict should be taken for $1079.47, with interest from the date of the writ, and that judgment be entered on the verdict, or the verdict amended by adding interest from the time of the demand, or from the time the defendants received the several sums ; or by deducting the amount expended for Abbot's support, or the amount barred by the statute of limitations, if any, either or both, and judgment rendered on such amended verdict ; or that the verdict be set aside and judgment entered for the defendants, according to the opinion of the court.

*John S. Wells,* for the defendants.

1. It was the duty of the town to take charge and control of Abbot, he being clearly a pauper under the statute.

2. It is not the duty of towns to support their paupers in idleness, but every one is bound to contribute his services, according to his ability, towards his own support. Such is the universal custom, and its propriety is clearly indicated in our statutes, which authorize towns to purchase and hold lands for " the accommodation, support and *employment* of their poor." Compiled and previous Statutes. See, also, *Wilson* v. *Church & al.,* 1 Pick. 26.

In *Briggs & al.* v. *Whipple,* 6 Vt. 100, the court say the town had the right to cut the wheat by direction of Alger, whose family were paupers, either as compensation for part, or *as an indemnity against future expenses of his family.*

3. The case shows that Abbot is *permanently* insane, having been in that condition for nearly forty years. He is liable to be returned upon the town at any hour, and the fact that his guardian has *not been able to make any better arrangement than his board and clothes for his labor,* shows that he will be returned.

4. The theory upon which this claim is based would require every town to open an account current with their paupers, unless they allowed them to live in absolute idleness.

If the labor of a pauper exceeded in value his support, his friends could at any time obtain guardianship and compel the town to account. Here the value of what the town has received is definite. In the cases referred to it can be made equally definite by the finding of the jury.

*Marston,* for the plaintiff.

1. The case finds that since 1819 Abbot has been an insane person. He never applied to the town for aid, nor did his friends for him. He did not assent to be treated as a pauper, for by reason of his insanity nothing which he did or omitted to do is to be taken as evidence of assent.

In fact, Abbot never was a pauper, for he has always had the ability to earn, and always has earned more than sufficient for his support. Such a person is not a pauper. *Wilson* v. *Brooks,* 14 Pick. 344.

He was no more a pauper than if he had had an annuity or an income from any source more than sufficient for his support.

By reason of insanity he was unfitted for the management of property, or the direction of his labor. He stood in need of aid, and it was the duty of the selectmen to have procured the appointment, upon his relations neglecting it.

But the town of Fremont assumed and exercised the office of guardian over this person, without right, and received the avails

of his labor, which his legal guardian is now entitled to recover. The acts of the town in respect to Abbot were unauthorized by any statute. It was simply an exercise of arbitrary power over the person and estate of one who was incapable of resisting it. The relief which towns are required to furnish to poor persons is a gratuity, and cannot be recovered back ; and much less can towns retain the property of a poor person, or one likely to become a pauper, as indemnity against future support. *Charlestown* v. *Hubbard*, 9 N. H. 195. The defendant town has the money of this plaintiff in its treasury, which in equity and good conscience it ought not to keep.

2. The statutes of limitations do not run against persons under the disability of insanity. Comp. Laws, ch. 192, sec. 8.

3. The plaintiff is entitled to interest from the time the several sums were paid into the town treasury. *Pierce* v. *Dustin*, 4 Foster 427.

PERLEY, C. J. A town is entitled to the services of a pauper while he is on the town as a pauper. The town is not bound to keep an account with him of his services and the amount expended for his support. When paupers are maintained together at a poor house, or on a poor farm, it would be quite impracticable to state an exact account with each pauper, showing the difference between the value of his labor and the sums expended for his relief. *Com.* v. *Cambridge*, 20 Pick. 272 ; *Wilson* v. *Church*, 1 Pick. 26 ; *Jenness* v. *Emerson*, 15 N. H. 486.

The pauper, while in charge of the town as such, receives his support as a public charity. There is no implied contract between the town and him, by which he is bound to repay the money expended on his account, even though he should afterwards become able. *Charlestown* v. *Hubbard*, 9 N. H. 195. And on the other hand, any benefit the town may derive from his labor belongs to them, as incident to the relation of a pauper on the town. The amount that may be required for his relief must in all cases be regarded as more or less accidental and contingent. When the pauper is of full age and sane mind, and

the support is furnished on his own application, it would seem to be plain that he can receive nothing for his services, though their actual value might exceed the amount of expense incurred for his relief. He claims the aid of the town, and voluntarily remains on their hands as a poor person, unable to maintain himself. The only serious difficulty in the present case arises from the fact that the plaintiff was insane.

But if the town took and retained charge of the plaintiff, honestly and fairly, as a pauper needing relief, because his settlement was there, and because the good of the plaintiff and the security of the town were believed to require it, the fact that he was insane would not change the character of the relation in which he stood to the town. He would still be on the town and in charge of the town as a pauper. An insane person cannot make a binding contract; the plaintiff in this case is not prevented from recovery upon the ground that he has voluntarily remained in charge of the town as a pauper. But relief is not afforded to a pauper by virtue of any contract between him and the town; they are not parties to any contract, express or implied. The town in maintaining the pauper acts in the discharge of a public duty; and the rights and liabilities of the town in no way depend on the legal capacity of the pauper, provided he is a pauper in fact, and properly on the town as such. The overseers are not agents of the town, authorized to bind the town by contracts with paupers. They are public officers, charged with the duty of relieving the poor, who have their settlement in the town, or who are actually in the town needing assistance.

If the case had shown that the officers of the town dishonestly assumed or retained control over this insane plaintiff, under pretence that he was a pauper, when he was not so in fact, and needed no relief, for the sake of making a profit for the town out of his labor, it would be an injury to the plaintiff, for which the law in some form ought to give him redress. But ordinarily the town would not be liable for such wrongful acts of their officers, done, not in discharge of their duty, but in violation of it. In such case, if the labor were performed directly for the town,

and the question whether it exceeded in value the support of the pauper depended on an uncertain estimate, it would be dangerous to hold that the town could be sued to recover a surplus, even if the town officers had misbehaved in retaining the insane plaintiff in their charge as a pauper. The remedy would be, we think, against the officers personally for their wrongful act, and not against the town for the value of the plaintiff's services.

In this case the action is for money had and received, as well as for work and labor; and if the officers of the town in any year retained possession of the plaintiff under color of his being a pauper, understanding that he was not in fact a pauper, and that he needed no relief, in order to obtain a profit from his labor for the town, and in the same year a definite sum of money was received by the town for his labor beyond his support, we think the plaintiff might waive any other remedy he may have had against the individual officers, and claim the money of the town, on the ground that he earned it and it belonged to him. In that case the implied assumpsit would arise from the fact that the money was in equity the plaintiff's, and not on the ground of an implied undertaking by the town to pay for his labor.

But the fact that money was received by the town for the plaintiff's labor, beyond his support, does not amount to a legal conclusion that the officers of the town acted unfairly by keeping the plaintiff in their charge as a pauper. It was uncertain, on the contracts made from year to year, whether the value of the plaintiff's labor would turn out to be greater than the amount that would be required for his support; and it may be well supposed that an honest and prudent management for the town and for the plaintiff would require him to be kept at home, in the care of the town, to prevent his straggling abroad and again falling into distress elsewhere.

The verdict must be set aside. If the plaintiff desires to try the question whether the officers of the town retained the plaintiff in their charge for the sake of a profit to be made out of his labor, as is before stated, a new trial may be granted; otherwise,

*Judgment must be entered for the defendant.*